J-S50035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.I.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF J.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 732 EDA 2017 |

Appeal from the Order Entered January 20, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001289-2016,
CP-51-DP-0002627-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: R.J.G.-L., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF J.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 736 EDA 2017 |

Appeal from the Order Entered January 20, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001291-2016,
CP-51-DP-0002628-2014

J-S50035-17

IN THE INTEREST OF: Q.R.B., A    :    IN THE SUPERIOR COURT OF
MINOR                            :             PENNSYLVANIA
                                 :
                                 :
APPEAL OF: J.B., MOTHER          :
                                 :
                                 :
                                 :
                                 :    No. 737 EDA 2017

Appeal from the Order Entered January 20, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001294-2016,
CP-51-DP-0002626-2014

IN THE INTEREST OF: Z.L., A MINOR    :    IN THE SUPERIOR COURT OF
                                     :             PENNSYLVANIA
                                     :
APPEAL OF J.B., MOTHER               :
                                     :
                                     :
                                     :
                                     :
                                     :    No. 738 EDA 2017

Appeal from the Order Entered January 20, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001295-2016,
CP-51-DP-0002630-2014

IN THE INTEREST OF: Z.J.L, A    :    IN THE SUPERIOR COURT OF
MINOR                           :             PENNSYLVANIA
                                :
                                :
APPEAL OF: J.B., MOTHER         :
                                :
                                :
                                :
                                :    No. 739 EDA 2017

Appeal from the Order Entered January 20, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001305-2016,
CP-51-DP-0002629-2014

- 2 -

J-S50035-17

BEFORE:   PANELLA, MOULTON, and RANSOM, JJ.

MEMORANDUM BY RANSOM, J.:                    **FILED SEPTEMBER 27, 2017**

J.B. ("Mother") appeals from the decrees and orders dated and entered on January 20, 2017, granting the petitions filed by the Philadelphia Department of Human Services ("DHS" or the "Agency"), seeking to involuntarily terminate her parental rights to her six children, R.I.L. ("Child 1"), a female born in December of 2009[1]; R.J.G.-L., Jr. ("Child 3"), a male born in April of 2011; Q.R.B. ("Child 4"), a female born in January of 2009; Z.L. ("Child 5"), a female born in October of 2012; and Z.J.L. ("Child 6"), Child 5's twin brother,[2] (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and change the Children's permanency goals to adoption.[3]  We affirm.

_____

[1] DHS also sought the termination Mother's parental rights to Q.J.B.-L. ("Child 2") a female born in June of 2006, and a goal change to adoption for Child 2.  Child 2 was reunified with her father, G.G., on October 20, 2016, however, so DHS withdrew its petitions at the evidentiary hearing on January 20, 2017.  N.T., 1/20/17, at 4-11.  Mother inadvertently filed an appeal from the termination of Mother's parental rights to Child 2 and the goal change for that child, which was assigned our Docket No. 735 EDA 2017.  On April 3, 2017, Mother filed a praecipe to discontinue the appeal, and this Court discontinued the appeal on that same date.  Accordingly, this Memorandum will discuss Mother's appeals with regard to her other five children.

[2] *See* N.T., 1/20/17, at 93-94.

[3] On January 20, 2017, the trial court terminated the parental rights of the father of Child 4, A.F.B.  At the hearing on January 20, 2017, R.J.G.-L., III a/k/a R.L., Sr. a/k/a R.L., consented to the voluntary termination of his parental rights to his children, Child 1, 3, 5, and 6.  N.T., 1/20/17, at 105.  In separate decrees entered on January 20, 2017, the trial court terminated
*(Footnote Continued Next Page)*

- 3 -

The trial court set forth the factual background and procedural history of this appeal as follows.

> The family in this case became known to DHS on October 21, 2014, when DHS received a General Protective Services ("GPS") report alleging that Mother was not appropriately supervising Children. The report alleged that Mother left Children unattended home alone for over an hour; the [m]other admitted to leaving the children home alone at 3 pm that day while she went to pick up paperwork; and that [C]hildren were seen banging on a window in the home, so Philadelphia police were called. The report also alleged that the police arrested Mother upon her return home, and Children were taken to home of Paternal Grandmother ("PGM"). On October 22, 2014, Mother was arrested and charged with five counts of endangering the welfare of children where a parent, guardian, or other custodian commits the offense and recklessly endangers another person. Mother pleaded guilty. The Honorable Patrick Stack issued a stay-away order against Mother as to Child 1, Child 3, Child 4, Child 5, and Child 6. Also on October 22, 2014, DHS visited PGM's home and learned of her grandparent status to Child 1, Child 3, Child 5, and Child 6. DHS implemented a Safety Plan to ensure that Children were safe, with their needs being met; and PGM agreed to notify DHS if Mother attempted to remove Children from the home. PGM indicated that Children were unkempt when they came to her; that Child 4 had been wearing underwear belonging to maternal grandmother; that Child 3 had not been wearing any underwear; and that Child 5 and Child 6 were not wearing diapers. PGM expressed interest in kinship care services[,] and DHS completed clearances for her and her daughter, paternal aunt. DHS also learned that Child 2 had been residing with maternal great-aunt ("MGA") at the time of the incident. A stay-away order had been issued against Mother as to Children. On November 6, 2014, DHS visited Child 2 in MGA's

_(Footnote Continued)_ ─────────

the parental rights of any unknown father of the Children. On March 10, 2017, the trial court confirmed the consent of R.J.G.-L. to the termination of his parental rights. Neither A.F.B. nor R.J.G.-L., nor any unknown father has filed an appeal, nor is any such individual a party to the present appeal.

- 4 -

home[,] and Child 2 appeared well and her needs were being met. MGA requested temporary legal custody ("TLC"), after which DHS conducted clearances of MGA and approved her as caregiver for Child [2]. On November 6, 2014, DHS also obtained an Order for Protective Custody ("OPC") for Children.

On November 7, 2014, a shelter care hearing was held during which the OPC was lifted and the temporary commitment to DHS was ordered to stand. Mother was referred to the Clinical Evaluation Unit ("CEU") for forthwith drug and alcohol screens and dual diagnosis assessment. On November 25, 2014, Children were adjudicated dependent and fully committed to DHS. The [c]ourt ordered that a Single Case Plan ("SCP") meeting be held within twenty days and Mother was referred to the Achieving Reunification Center ("ARC") program for all appropriate services. Mother was also referred to the CEU for assessment, a forthwith drug screen, and dual diagnosis to include alcohol. The [c]ourt also ordered a Parent Locator Search ("PLS") to be conducted as to fathers for Child 2 and Child 4. Mother tested positive at the CEU for tetrahydrocannabinol ("THC"). On February 17, 2015, this matter was continued. On March 5, 2015, the Community Umbrella Agency ("CUA") Asociación Puertorriqueños en Marcha (["]APM["]) created an SCP for the family. Mother's objectives were to attend ARC, to attend visitation with Children, and to comply with [c]ourt orders and attend the CEU. On April 14, 2015, a permanency review hearing was held[,] at which the [c]ourt ordered that Children remain committed to DHS. The [c]ourt noted that Mother was substantially compliant with the permanency plan. Mother was again referred to the CEU for a forthwith drug screen, three random screens, and dual diagnosis assessment and monitoring. Mother tested positive for barbiturates at the CEU. On July 8, 2015, this matter was continued. At the permanency hearing on September 30, 2015, the Master noted that Mother was fully compliant with the permanency plan. Mother was ordered to comply with scheduled CEU assessments and to comply with all SCP objectives and recommendations. At a permanency hearing on November 24, 2015, the [c]ourt found that Mother was moderately compliant with the permanency plan and ordered that[,] if Mother's drug screens are negative, she may have weekly unsupervised visits at the agency. The [c]ourt also ordered that if Mother had any trace of illegal substances, she would only be allowed supervised weekly visits in the community. In

addition, if Mother did not comply with her intake at Guadenzia, visits would also change from unsupervised to supervised. At a different permanency review hearing on February 23, 2016, the [c]ourt found that Mother was substantially compliant with the permanency plan and Mother was referred to the CEU for an assessment, dual diagnosis, and a forthwith drug screen to include five random drug screens and to ARC for job training. On May 27, 2016, this matter was continued. Mother was referred to the CEU for a forthwith drug screen, dual diagnosis and three random drug screens before the next court date. On June 6, 2016, APM revised Mother's SCP to add appropriate housing. At a permanency hearing on August 30, 2016, Mother was referred to the CEU for a dual diagnosis and forthwith screen with three random drug screens and Mother was ordered to engage in a domestic violence program and to be referred to ARC for services. Mother was also to have weekly supervised visits with Children in the community. On October 27, 2016, APM revised Mother's SCP objectives which added that Mother was to attend weekly supervised visits with Children; to continue to comply with mental health, behavioral health, and medical needs; to locate appropriate housing; to comply with CEU orders; to make her whereabouts known to DHS; to comply with CUA services and interventions, to attend ARC; and to comply with alcohol treatment at Guadenzia. At different permanency hearings, the trial court always found reasonable efforts on the part of DHS. Mother has been moderately compliant with the permanency plan and has not successfully completed her parental objectives.

Trial Court Opinion, 3/24/17, at 2-4 (citations omitted).

On December 28, 2016, DHS filed petitions to involuntarily terminate Mother's parental rights to the Children and to change their permanency goal to adoption. On January 20, 2017, the trial court held an evidentiary hearing on the petitions for termination of parental rights and goal change. Following argument, the trial court terminated Mother's parental rights to Children, except Child 2, under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8), and (b), and changed the goal to adoption.

On January 23, 2017, the trial court granted Attorney Hayburn's motion to vacate his appointment as counsel for Mother, and appointed Attorney James Martin to represent Mother. On February 17, 2017, Mother filed a notice of appeal from the decrees entered on January 20, 2017 terminating her parental rights to the Children, and the permanency review orders entered on January 20, 2017, changing the permanency goal for the Children to adoption, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court, acting *sua sponte*, consolidated Mother's appeals on April 11, 2017.

In her brief on appeal, Mother raises two issues, as follows:

1. Whether the Trial Court erred by terminating the parental rights of Appellant, Mother, under 23 Pa.C.S.A. § 2511 subsections (a)(1), (a)(2), (a)(5) and § 2511(a)(8)?

2. Whether the Trial Court erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of Appellant's parental rights best serves the Children's developmental, physical and emotional needs and welfare?

Mother's Brief, at 5.[4]

---

[4] Mother has waived any challenge to the change in the Children's permanency goal to adoption under 42 Pa.C.S. § 6351 by failing to raise the issue in her concise statement and Statement of Questions Involved in her brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal).

- 7 -

Mother argues that DHS presented insufficient evidence for the trial court to terminate her parental rights under section 2511(a)(1), (2), (5), (8), and (b). Mother's Brief, at 8.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, [19], 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.**; **R.I.S.**, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**; **see also Samuel Bassett v. Kia Motors America, Inc.**, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); **Christianson v. Ely**, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**
>
> As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an

error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will focus on section 2511(a)(2) and (b), which provide, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 9 -

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity.  The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

> *In re Adoption of J.J.*, [511 Pa. 599, 605,] 515 A.2d 883, 891
> (Pa. 1986) (*quoting* *In re: William L.*, [477 Pa. 322, 345,] 383
> A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 47 A.3d at 827.

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

With regard to section 2511(a)(2), Mother argues that the trial court erred when it concluded that DHS presented clear and convincing evidence that she is presently incapable of providing proper care for the Children. Mother's Brief, at 12. Mother asserts that she has remedied the conditions that brought the Children into care and that she is capable of parenting them at this time. *Id.* at 13.

> The trial court provided the following analysis:
>
> The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect, or refusal of the parent that causes the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

The five Children were taken into DHS custody because Mother was unable to provide essential parental care: she was not properly supervising the Children and admitted to leaving them home alone for over an hour; she was then arrested and charged with endangering the welfare of children, to which she pleaded guilty; she had substance abuse problems; she did not have adequate housing for her and the Children; she was unemployed; and the Children were unkempt, Child 4 was wearing maternal grandmother's underwear and Children 5 and 6 were not wearing diapers when removed from Mother's home. Mother did not successfully complete her SCP objectives. Mother has not completed a drug and alcohol program and only re-enrolled with Gaudenzia in October 2016 after having been discharged for noncompliance during the summer of 2016. (N.T. 1/20/17, pgs. 17, 19-20, 36, 42). Mother relapsed twice during the life of the case, testing positive for benzos, opiates, and more recently cocaine. (N.T. 1/20/17, pgs. 17-18, 20, 92-93). Mother admitted that she suffers from depression, and also testified that she was not engaged in mental health treatment even though she was ordered to do so multiple times by the court. (N.T. 1/20/17, pgs. 54, 86-87). Mother did obtain employment. (N.T. 1/20/17, pgs. 39-40). Mother, however, testified that her new employment prevented her from appearing at recent court ordered CEU drug screens. (N.T. 1/20/17, pgs. 36-37, 51). Mother completed housing at ARC. Mother does not have appropriate housing, and has not made any efforts to obtain appropriate housing at any point during the life of the case. (N.T. 1/20/17, pg. 22, 36). Mother resides in a bedroom within a family friend's house. (N.T. 1/20/17, pgs. 22). Mother also completed parenting classes in March 2016. (N.T. 1/20/17, pgs. 38-40). However, the case manager testified that Mother cannot protect or properly care for the Children at this time. (N.T. 1/20/17, pg. 68). Mother's visits with the Children have been sporadic; Mother attends approximately two out of four visits in a month. (N.T. 1/20/17, pgs. 23, [42]). Mother had unsupervised visits at one time, but visits were changed to supervised when she tested positive on a CEU drug screen. (N.T. 1/20/17, pg. 22). Mother has failed to take affirmative steps to place herself in a position to parent the five Children. The five Children need permanency, which Mother cannot provide. Therefore, DHS met its burden under 23 Pa.C.S.A. §2511(a)(2)[,] and termination of Mother's parental rights under this section was proper.

Trial Court Opinion, 3/24/17, at 10-11.

After a careful review of the record, we find that termination of Mother's parental rights to the Children was warranted pursuant to section 2511(a)(2), as Mother clearly lacks parental capacity, and the evidence showed that she will be unable to remedy that situation within a reasonable period of time, if ever. As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we would find no abuse of the trial court's discretion in terminating Mother's parental rights to the Children under section 2511(a)(2). *In re Adoption of S.P.*, 47 A.3d at 826-27.

Next, this Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to

- 13 -

discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

With regard to its analysis of the Children's best interests and the effect of severing any bond between the Children and Mother, the trial court stated the following:

> The court heard testimony that none of the Children would suffer permanent or irreparable harm if Mother's parental rights were terminated. (N.T. 1/20/17, pgs. 29-30, 66-67). The Children have been in care for twenty-six months and need permanency. Child 4 is currently placed with MGA, who has cared for Child 4 since coming into care. Child 4 is bonded with MGA and sees her as the primary parental figure. (N.T. 1/20/17, pgs. 28-29). The court heard testimony that adoption of Child 4 by MGA is in Child 4's best interests. (N.T. 1/20/17, pg. 29). Children 1, 3, 5, and 6 are currently placed with the paternal aunt who has cared for them for the last two years. (N.T. 1/20/17, pg. 64). These Children consider the paternal aunt as their mother and caregiver. (N.T. 1/20/17, pg. 64). The court heard testimony that adoption would be in the best interests of these Children. (N.T. 1/20/17, pgs. 67-68). The conditions that led to all five Children's removal from Mother's care continue to exist as Mother failed to complete all her SCP objectives. The testimony of the DHS witness was unwavering and credible. Mother is not ready or able, as of the date of the termination trial, to parent the Children. (N.T. 1/20/17, pg. 68). The record contains clear and convincing evidence that termination was in the best interests of the Children[.]

Trial Court Opinion, 3/24/17, at 14-15.

After a careful review of the record, we find that termination of Mother's parental rights to the Children was warranted pursuant to section 2511(b), as the evidence showed that the Children's developmental, physical and emotional needs and welfare will best be met by the termination of

Mother's parental rights. Further, the evidence showed that there is no bond between Mother and the Children that is worth preserving.

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs

of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we would find no abuse of the trial court's discretion in terminating Mother's parental rights to the Children under section 2511(b). *In re Adoption of S.P.*, 47 A.3d at 826-27. We, therefore, affirm the trial court's decrees terminating Mother's parental rights to the Children, and the orders changing the Children's permanency goal to adoption.

Decrees and orders affirmed. Jurisdiction relinquished.

*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 9/27/2017*